## STAGG vs. ALEXANDER.

Where a debtor settles the amount due from him to his creditor upon notes and drafts, by giving him, in full satisfaction of the claim, a draft on a third person for fifty per cent of the amount, payable in gold, which is subsequently paid, and the creditor accepts such draft and surrenders and cancels the evidences of the indebtedness, this is a good accord and satisfaction.

THE plaintiff sued the defendant, as survivor of the firm of R. J. Lawlor & Co., as acceptor of four drafts, of the dates, amounts, and falling due as follows:

Date, Jan'y    5, 1861, for $1465.24,  due Sept. 8, 1861.
      Feb'y    9, 1861, for  1552.65,  due Oct. 12, 1861.
      March 16, 1861, for  1208.35,  due Nov. 19, 1861.
      April 20, 1861, for  1580.19,  due Dec. 23, 1861.

The complaint admits a payment of $2800 on April 12, 1864.

The answer avers that the drafts were given for the accommodation of the plaintiff. And for a separate defense, the defendant avers that the defendant, being indebted to the plaintiff, gave to him a draft, dated at Matamoras, March 12, 1864, drawn by H. E. Woodhouse on J. H. Woodhouse, of New York, for $2800 in American gold, in full of the claim, and that the draft was paid.

The case was tried before Judge J. F. BARNARD and a jury, in January, 1868. The defendant, being called as a witness, proved the partnership of himself and Robert J. Lawlor, and produced five promissory notes of his firm, dated in April, May and June, 1861, for within about $200 of the amount in the aggregate of the four drafts, and testified that he settled these notes with the plaintiff, by giving for them the draft of $2800 in gold. The plaintiff, being called as witness, proved that the drafts and notes represented the same debt; the former having been substituted for the latter, so that the plaintiff could use them in bank. The drafts were all given at the same time, but dated back, for the accommodation of the plain-

tiff. The debt grew out of the importation of goods by the plaintiff for R. J. Lawlor & Co., on which the only compensation of the plaintiff was a commission of from two and a half to five per cent. With reference to the settlement, the plaintiff testified in open court, in substance, that he agreed to take fifty cents on the dollar for his debt, and then the defendant placed the amount, $2800 and some cents, in gold, on the table. Then, and not afterwards, the plaintiff counted the gold, and then, and not afterwards, gave the notes to the defendant. The plaintiff then being in possession of the gold, and the notes given up to the defendant, the plaintiff asked what he could do with the gold, and the result was that the defendant went out and bought the draft. The defendant said he "would do nothing but pay me in gold; he said he would go and see if he could buy a draft for me, I think of a person named Woodhouse; he went out, and came back, and said he could buy a draft for $2800. I said he could buy it."

Before the trial the plaintiff was examined as a witness by the defendant, and gave then a version of the settlement not materially different from that on the trial; but on that examination he said, "I gave him the notes when the gold was placed before me; I counted the gold and gave him the notes; the settlement was made then, and there, for the notes."

The amount due on the notes at the time the plaintiff collected the Woodhouse draft, viz., April 12, 1864, was:

Principal, . . . . . . . . . . . . $5619 15
Interest, . . . . . . . . . . . . . 837 98
Total, . . . . . . . . . . . . . $6457 13

This assumes that the notes, and not the drafts, represented the true amount due. The amount received by the plaintiff, in currency, was $5418. It was therefore claimed that if the plaintiff was bound to credit the amount that

the gold produced in currency, his debt was still unpaid to the extent of $1038.95, and interest from April 12, 1864.

At the close of the testimony the defendant's counsel moved for a dismissal of the complaint, upon the ground that an accord and satisfaction was shown. In the first place, that the draft was purchased by the defendant and given in full payment and settlement of this claim; secondly, it showed the debt on which this suit was brought had been paid and liquidated, and the securities or the vouchers for the debt had been surrendered, which amounted to a release in law. That there was no dispute about that fact; both parties agreeing that these notes were surrendered up, and that that was the last of it. That here was a full settlement in accord and satisfaction of this whole claim. The plaintiff himself saying these drafts and notes represented one single and distinct transaction; that it had been settled by the payment made and by the delivery of this draft of $2800, and that the notes, which were the evidence of the debt, had been delivered up to the defendant, and had been canceled, and there was nothing for Mr. Stagg to base his suit on at the time he commenced this action.

The court granted the motion to dismiss the complaint, and the plaintiff appealed from the judgment of dismissal.

*Aug. F. Smith,* for the appellant. I. The receipt by the holder of a note past due, of a part of the sum due on the note, in full, does not discharge the debt beyond the sum received. (*Harrison* v. *Close,* 2 *John.* 448. *Seymour* v. *Minturn,* 17 *id.* 169. *Dederick* v. *Leman,* 9 *id.* 333. *Hunt* v. *Bloomer,* 5 *Duer,* 202.)

II. The question whether the plaintiff took the gold, or whether he took the Woodhouse draft in full, was a question of fact for the jury. The court took the question from the jury and nonsuited the plaintiff.

Stagg *v.* Alexander.

*C. A. Runkle,* for the respondent. I. It was admitted on the trial, by the plaintiff, that the drafts sued on, and the notes which had been paid by Alexander at Matamoras, represented one and the same transaction—were given in payment of the same debt. There was no question to be submitted to the jury. The plaintiff and defendant were both examined in full on the trial, and both swore that when the defendant offered the plaintiff the gold he declined to receive it, and the defendant went out and bought the draft in question. Until the draft was given to the plaintiff, and the notes given to the defendant, the transaction was not closed. When this draft was given to the plaintiff the notes were given to the defendant. There was no dispute about the facts.

II. The plaintiff accepted the draft in question in payment of the debt, and surrendered the notes to the debtor. That amounted to a full accord and satisfaction of the debt. 1. A note or draft of a third person, though for a less amount than the debt, is a good accord and satisfaction. (*Le Page* v. *McCrea,* 1 *Wend.* 164. *Kellogg* v. *Richards,* 14 *id.* 116. *Brooks* v. *White,* 2 *Metc.* 283.) 2. The note of the debtor indorsed by a third person, though for less than the debt, if accepted in full satisfaction, is a good accord and satisfaction. (*Boyd* v. *Hitchcock,* 20 *John.* 76.) 3. The note of a third person, indorsed by the debtor, is a good accord and satisfaction. (*N. Y. State Bank* v. *Fletcher,* 5 *Wend.* 85. *Booth* v. *Smith,* 3 *id.* 66.) 4. If the creditor takes from the debtor the note of a third person as payment, it is a good accord and satisfaction. (*St. John* v. *Purdy,* 1 *Sand.* 9.) 5. If a creditor receives from one partner the note of a third person, indorsed by him, in payment of the debt of the firm, it is a good accord and satisfaction. (*Frisbie* v. *Larned,* 21 *Wend.* 450.)

III. Where it was the intention of the parties that the payment or settlement should be received in full satisfac-

Stagg *v.* Alexander.

tion, the court will, if possible, sustain it. (*Kellogg* v. *Richards*, 14 *Wend.* 116.)

*By the Court*, GEO. G. BARNARD, J.   I am of opinion that under the circumstances of this case the payment of fifty per cent in gold, in full satisfaction of the plaintiff's claim, accompanied by the surrender and cancelment of the paper evidence of the claim, was a good accord and satisfaction.   Gold was at a premium of nearly one hundred per cent, and with the gold the debtor could get paper which would as well pay his debt as gold.   The creditor agrees to accept gold, and in effect to buy his own paper money or keep its equivalent in gold, as he elected.   It seems to me, however, quite clear, from the evidence, that the draft was received, and not the gold.   The defendant testifies so, expressly.   The plaintiff, I think, does not raise an issue upon this question.   He says, when the gold was placed on the table, "I said 'what can I do with it? can't you give me a draft?' he said no, but might buy me one; he said he would go and see, and came back and said he could buy a draft.   I said 'he could buy it;' he brought the draft in, payable to my own order.   I took the draft."

The transaction was not complete until the plaintiff accepted something; he did not accept the gold; he did accept the gold draft on a third person, which was subsequently paid in gold.   I think the judgment should be affirmed, with costs.

[NEW YORK GENERAL TERM, June 7, 1869.   *Clerke, Geo. G. Barnard* and *Cardozo,* Justices.]